I would like to start off that I wouldn't like to reserve about five minutes for my rebuttal. Now that I can see the clock on Friday. Okay. So I'll begin. May it please the court, I'm going to address the following points. First, that the District Court erred in finding that the City and County of San Francisco is immune from suit for torturous interference with a contract, which was in the Second District Court abused its discretion in failing to consider Synergy's motion for leave to amend before granting the motion to dismiss. And finally, that the District Court erred in dismissing Synergy's First Amendment retaliation claim, the claim for stigma plus and the claim for de facto debarment. And initially, I would like to point out that a new case that come out recently, Caliber Paving Company versus Rexford Industrial Realty is on point for this case. It's a California Court of Appeals discussing the rule, the law, torturous interference in a case that with facts analogous to this case involving a management company, a general contractor, and a subcontractor, just like City & County of San Francisco, general contractor, and then Synergy as a subcontractor. In that case, it's important because it discusses the lower court's decision. And it said, we do not find it to be persuasive. And they point out that the District Court in this case disregarded Asahi and Redfern, did not mention Woods or Propescu, and engaged in no analysis of applied equipment. And that's important because those were all cases discussing this. And it found that the District Court in this case did not engage in that analysis of applied equipment or reference those cases. And the court concluded that the defendant who is not a party to the contract or an agent of the party to the contract, like the City & County of San Francisco, is not immune from liability for intentional interference with contract by virtue of having an economic or social interest in the contract. This is important because it directly contradicts the findings of the District Court in this case. And it should be controlling on this case. And it shouldn't necessitate the reversal on the intentional interference claim. Now, I will go into later on the perspective economic interference claim, which the City has said requires an element of wrongdoing. I will point out for intentional or negligent infliction of or interference with the contract claim, there's no element or requirement of wrongness. Is that right? I've looked at the, and I'll mispronounce the case, it's Excel Pharmacy. And at least for at-will contracts, isn't there a wrongfulness requirement? Isn't there? I couldn't understand what you said, Judge. At least for at-will contracts. One of your, one of the contracts here was an at-will contract, correct? That was allegedly interfered with. Yes. Doesn't Excel tell me that for at-will contracts, there's a wrongfulness requirement for intentional interference? Well, even if there is a wrongfulness requirement, the California elements for the wrongfulness and the law case audit is very broad. It can be a wrongful act even directed at a third party. So in this case, we've made accusations that Nehru, one of the defendants engaged in criminal acts, there is the change in the testimony among various parties of Synergy being responsible, being not responsible. The allegations related to the PG&E falsified maps, which are the subject and have been the subject of several investigations because they falsified the maps, they falsified public records. And just bear with me for a second. I know you allege they did a bunch of things wrong. Yes. Tell me how those things led to the breaking, if you will, of a contract. I understand how they injured you in the abstract, but that's not what this claim is about. How did they lead to the breaking of the contract? They led to the breaking of the contract because those were the, some of that was the specific grounds for the contract. For example, I believe we say that the city cited the breaks as a cause for the contract. Those breaks were directly caused by the falsified maps provided by PG&E. The PG&E maps did not show the proper locations, and we allege that of the various... How's that wrongdoing on the part of the city? Well, it doesn't have to be the wrongdoing on the part of the city. Crown Imports LLC, a California case, says that the interfering party is liable even when the wrongdoing is not. But in this case, the maps were... The wrongdoing that you're alleging is by a third party, not focused at a third party. Here you're alleging that PG&E did something. Well, they did it, and they provided those false maps to Synergy and to the City and County of San Francisco. Okay. So this is not a suit against PG&E? Well, it's also the city relied on those maps, and the city at the hearing said that Synergy was at fault even though they provided the maps. So the maps were provided by the city to Synergy. So your contention is that providing a map that it received from the utility to Synergy is a wrongful act by the city? When the city assures us that the maps are correct, and then when they're shown to be incorrect, the city still relies on those maps to remove Synergy and to blame Synergy for those wrongful acts. Even if the city justifiably relied on these maps provided by the utility, it nonetheless cautiously interfered with this contract. Among them various reasons. But basically, again, wrongful acts are not an element of intentional interference with a contract, and we have that in Put-Down 7. Well, that's not what they are with respect to at-will contracts. Well, according to the California jury instructions, Ipschel squarely says that wrongfulness is an element of tortious interference with an at-will contract, doesn't it? Well, perspective. No, perspective. Again, the elements, as in footnote 5 of our brief would point to the elements of tortious interference, and only in the perspective, interference with a contract is wrongdoing an element, and that was the California Supreme Court. It was not for negligent or intentional, and they make that distinction in that case. Is the Van Ness contract an at-will contract as well? I assume you're asking for the construction industry. Yes, they're all construction contracts. So is that one an at-will contract as well? It follows the same guidelines as the H Street contract, and in terms of at-will, there are certain established rights once the contract is signed, so you can only be removed for cause. So I wouldn't necessarily characterize the H Street as an at-will contract because you can only be removed for cause as shown by the contract itself and by the application of the statutes. The statutes say you can only be removed by the general contractor, and they list reasons. The California Court of Appeals, after this lawsuit had been filed, ruled that the city was unable to remove Synergy, but again, for cause, not just, I wouldn't say at-will. You had to establish a statutory reason for the removal. Can you educate us on what's going on in the state court proceedings that are operating concurrently to this case? Yes, Your Honor. Right now, we are proceeding against Jaladi Brothers. We had filed a motion to amend, which was denied, and we had actually asked for judicial notice of that, and they did not allow the amendment because they thought the federal court should handle the federal claims that we were seeking to amend. In between... Before you leave that point, as to Jaladi Brothers, are you attacking the district court's remand order? We were, but at this point, because the state case has moved so far and is set for trial in August, I think the remand order at this point, for the state claims, not the federal claims against Jaladi, but at least for the state claims, would probably just be better to be moved ahead in the state court, because we plan to go to trial in August. Were there federal claims against Jaladi in this action? In the proposed Fourth Amendment complaint. At least up through the third. When the court dismissed the action, you hadn't asserted any federal claims against Jaladi, right? Correct. Okay. And so you want the state law claims against Jaladi to proceed in state court? At this point, it would seem, yeah, most expeditious of court resources. Yes? The answer to my question is yes? Yes, Your Honor. Okay, so... Yes. Sorry, I pronounced yes a little low. I started off with yes, but I talked very quickly, so my yes got subsumed by my other comments, so I apologize for that. Okay. Now, with respect, let's assume for a moment, just for purposes of discussion, that we affirm the district court, and I know you want to turn to that, with respect to your federal claims against the city. What should we then do with the intentional interference claim? You send it back to the district court with the notion that it might also send them to the state court? I would be amenable to that. Okay, now I'm sorry, I cut you off, but you were talking about your proposed Fourth Amendment. Yes, and so that was rejected. I am using up my time, so I'll try to be as quick as possible, and so we are proceeding to... I'll give you a minute to rebuttal, because we're using up some of your time. Okay, so it was rejected because they said federal claims should basically remain in the federal court, and it didn't want to create two different outcomes. So we can't deal with the state court ruling. My question is, why do you think the district court abused its discretion in not allowing you to file a fifth complaint? I think it did that because it did not follow the FOMA factors. It did not find undue delay, bad faith, or dilatory motive. It merely stated that it dismissed it because it was a pending motion to amend, and I don't think that's sufficient grounds under FOMA or any other case to deny a motion to amend, especially when new facts have come to light, namely the indictment of Nehru and some other city officials and the ongoing corruption case against those officials demonstrating facts that impact this case, because Nehru may have awarded a contract in Van Ness for criminal... because of nefarious reasons, and that could have been the cause to remove Synergy. That's quite a stretch, isn't it? I mean, nothing really happened after the filing of the third amended complaint that affected your claims that you had been retaliating against because you filed the previous lawsuits, the lawsuits that got settled. So why does this information give rise to new claims with respect to those three lawsuits? Well, there's one other aspect of the amendment, is the city in this case waited to challenge specific things they could have challenged in prior amendments. They waited until after the amendment period had expired, and I believe that was a dilatory motive, and that by considering the claims that should have been raised earlier, the court should allow an amendment to cure any Why shouldn't these claims have been included in the third amendment? They're all related to the terminate... they all related to the termination of contract, in your view, allegedly because you filed lawsuits. So what was new? Well, some of this was... The court had extended the time for filing amendments at the time of the third amendment, in fact, hadn't it? No. You sure? Well, I'm not... I found the motion to extend the time. I... we... well, they may have extended the time, but we... what happened was, discovery was progressing, and the city was very slow in producing documents, and it produced documents on the very last day that discovery was open that included... that included facts, I believe emails by Nehru, and then statements maybe related by Giuliani around that time that we wanted to include in the amended complaint that we... it had not come to light before we filed the third amended complaint. And then how much later did you file the fourth? I cannot recall the exact date, but it was after the deadline to file an amendment. It was in response to the third amendment, right? But I... say that again? It was in response to their motion to dismiss the third amendment that you proposed before. Well, and upon the discovery of new information, yes. Fine. I know you wanted to save some time, so we'll put three minutes back on the clock for you. Cool rebuttal. Thank you. Thank you, Your Honor. So let's hear it for the city. Your Honor, and may it please the court, Deputy City Attorney Jamie Hewling DeLay for the City and County of San Francisco. It's Mayor London Breed and Muhammad Nehru. In this case, the city followed state statutory procedures in requesting the removal of its subcontractor synergy from two public works projects, and that goes to your earlier question about intentional and negligent interference with prospective economic advantage. It's absolutely clear under this court's precedent in Marin Tug, which interpreted the California Supreme Court's decision in Dela Pena, that any interference with prospective economic advantage torts must plead an independent wrongful act, such as a statutory violation, as their basis. And here, because the California Court of Appeal has already held that the city acted within its statutory authority in initiating Synergy's removal under public contract code section 4107A7 and upheld the hearing officer's factual findings that Synergy's work on the Haight Street project was substantially unsatisfactory and indeed unsafe and highly dangerous to the public, Synergy cannot plead any independent statutory basis. Let me understand your argument. You argue that there's some sort of collateral stopping? Yes, so... Don't the California cases say that the proceeding that eventually got into state court only relates to procedure? It doesn't relate to substance? Well, it does relate to substance because originally Synergy actually appealed the hearing officer's factual findings, the substance of those findings, that it was dangerous and unsafe and had not substantially complied with the plans and specifications. And it waived that substantive appeal, and that's an excerpt of Record 375. It decided to drop its claim that it substantially complied with the plans and specifications. And because of that, the hearing officer's factual determination that the prerequisites to invoke, the substantive prerequisites to invoke section 4107A7 were met is final. And so to the extent that Synergy argues here that it was removed for a different reason, that its work actually was good on this project, that's precluded by the hearing officer's decision, which was final as to that factual question. Wouldn't that only be the Haight Street Project? That is only to the Haight Street Project. However, in the record at page 819 is the government claim that Synergy filed with the city arising from the Van Ness Project. And in that government claim, Synergy also alleges, and this is part of the second amended complaint and the third amended complaint, it alleges that the city removed it from Van Ness Project pursuant to section 4107A1, that it objected, that it received a hearing, that witnesses and evidence were taken, and that the hearing officer issued a decision. And there's no evidence in the record about the outcome of that, but there can't be any kind of allegation that the city did anything other than employ its statutory prerogative to remove a subcontractor because it had met one of the statutory bases. And I'd like to discuss Synergy's... Judge Press had a question. Am I wrong, Judge? I'm sorry. I saw your yellow square light up. I'm sorry, Judge Hurwitz. I couldn't hear you for a second. If you're asking me, the moment may have passed here, but I did want to come back to the preclusion argument you were making. If we don't consider it preclusion, if we just put that off to the side, has Synergy pled an independently wrongful act just on the face of the complaint? The only independently wrongful act within the meaning of Marin Tug and Dela Pena that Synergy has alleged is a violation of section 4107. And here we know that there is no violation of section 4107. And I'd also like to point out that Synergy's reply brief does not contest that the California Court of Appeal decision is preclusive of that argument. When you say that we know there's no violation, is that, again, because of the California Court of Appeal decision? How else would we know that? Yes, it's the California Court of Appeal decision and the hearing officer's decision below. So, if I could explain the role. Before you leave that, I have two questions. The third amended complaint alleges First Amendment retaliation. Yes. First Amendment. And I know you think the district court correctly dismissed that claim. But if we find that the district court erred in dismissing that claim, why wouldn't retaliation be a wrongful reason? Well, because tortious interference with contract elements actually don't take into account motive at all, nor do tortious interference with prospective economic advantage. This court said in Marin Tug at 271 F.3D at 833, motive standing alone is entirely irrelevant. And so, the city could have acted with a bad motive, but that would not establish the elements of the torts that Synergy alleges here. And in particular... Isn't the retaliation an action? In other words, their motive may have been bad. But once they, if in fact they terminated or used their powers to cause these contracts to be terminated, because someone spoke, you exercise their First Amendment rights. Why don't we pass motive now into action? Well, that action has been determined to be the result of Synergy's failure to substantially comply with the plans and specifications. Yes. However, there are actually no allegations with respect to the Van Ness Project, zero allegations in the third amended complaint or the fourth amended complaint against any individual city employee with respect to Van Ness. Synergy does not plead that either Mayor Breed or Muhammad Nuru were involved in its removal from the Van Ness Project or that any city employee took any action with respect to Synergy with regard to that project. And so, it cannot state constitutional causes of action. And there's an alternative basis supported by the record upon which the court can hold that, which is that under Los Angeles v. Heller, the Supreme Court, the United States Supreme Court has held that there's no general respondeat superior liability, and likewise under Monell, and you have to actually plead a violation of a particular city employee in order to hold the city liable. Can I ask you a question Judge Bress asked before? I'm having trouble figuring out why the city is involved in the state court action, because the state court action was remanded from the district court, and all that was remanded was state law claims, none of which survived against the city. The city is not involved in the state court action. It is not a party. When the remand happened, the Superior Court maintained the original caption, Synergy v. City and County of San Francisco, but it's not a party, and that's why it's quite irregular that Synergy chose just recently to try and replead the four constitutional causes of action that the federal court dismissed with prejudice and that are on appeal before this court. Okay, that clears up procedurally. Now tell me why the district court shouldn't allow Synergy to file a fourth amended complaint. Well, there's two reasons. One, it did not meet the 16b good cause standard for doing so. It did not provide any good cause. I'd like to point out that this was approximately two weeks after the district court submitted the motions to dismiss the third amended complaint on the papers, and that's at Excerpt of Record 1363, and that it was 45 days after discovery had closed in the case, and the case management order had been twice extended to allow late amended pleadings to be filed by Synergy. The other reason... That reason is to deny the fourth amended complaint. What I see is an order from the district court that says you can refile your motion for leave after we dispose of the third amended complaint, but then the judge dismisses the third amended complaint with prejudice without leave to amend. Was there a disconnect there, Cece? There's no disconnect because the prejudice, the court found that any amendment would be futile, and that goes to my second reason why there was no harm in not allowing the proposed fourth amended complaint to be filed. It does not cure any of the defects with any of the causes of action that were identified by the district court. If you look at the first amendment retaliation... Yes. Tell me why it doesn't cure the problems with the first amendment retaliation. If you... The only additional facts that are pled in the entire proposed fourth amended complaint go to that cause of action. They're at Excerpt of Record 45 through 47 and Excerpt of Record 57. Excerpt of Record 45 through 47 are approximately paragraphs 16 through 21 of the proposed fourth amended complaint. Those basically say that the principle of synergy was engaged in an advocacy lobbying effort to get the city to comply with the prompt payment policy. None of those facts change what is... All of those facts, one, were known to Synergy before it even filed its case, and two, none of them changed the content of the speech that Synergy claims was on a matter of public concern, that it claims it was retaliated against. Synergy has argued that it was retaliated against because it filed four complaints with the city, four lawsuits against the city, the pre-2015 litigation. Each of those complaints is a straightforward contract dispute, and this court has held, actually in a case cited by Synergy in De Rocher versus City of San Bernardino, that we look to what plaintiffs actually said, not what they say they said after the fact. And these additional pleadings at paragraph 16 through 21 are really just an attempt to say that these straightforward private contract disputes were matters of public concern, and were actually about something different, which is California's prompt payment policy. California's prompt payment policy is actually a statute. It's nowhere mentioned in any of the four complaints. And if you look at the face of the Third Amendment complaint, and indeed the face of the proposed Fourth Amendment complaint, each of those lawsuits is described as they truly are, which is a straightforward contract dispute. Ms. DeLay, to go back to the black requirement, the Supreme Court resolved this on a ground that seems doubtful under intervening California Court of Appeals decision. So if on the interference claim, if that could be affirmed, do you agree it has to be affirmed on some ground other than the one the district court gave? Yes, and I'd like to discuss that basis. First of all, if we look to California Supreme Court's decision in applied equipment, the court made clear that tort liability presupposes that the defendant owes a duty to plaintiff recognized by law and is potentially subject to liability for a breach of that duty. Here, the California legislature gave the city the prerogative to remove a subcontractor from its public works project if one of nine statutory bases was met. And so the city cannot owe a duty to its subcontractor to refrain from exercising that statutory prerogative. Moreover, Synergy's brief misstates the elements of tortious interference with contract at page 31, note 5. Synergy says that the elements are that defendant's conduct prevented performance or made performance more expensive or difficult. But Bear Stearns, this court's, in Bear Stearns, the California Supreme Court defined the element as defendant's intentional acts designed to induce a breach or disruption of this contractual relationship. The city's act of removing Synergy under 4107 could not have disrupted Synergy's contractual relationship with Joloti because Synergy's contract with Joloti explicitly allowed the city to remove Synergy if in this exact circumstance and using these exact procedures. I understand this and I see your time is almost up, but I did want to just confirm. So under Caliber paving, which opposing counsel referenced, do you agree that the district court's decision? It does not. However, that decision is not controlling. That decision created essentially a circuit split between different appellate districts in California, P.M. Stewart in the second district and Caliber paving in the fourth. And so this court looks to applied equipment to the California Supreme Court's precedent in order to predict California law. And here the rationale of applied equipment makes clear that Synergy could not have had an expectation that it would not be removed if it violated section 4107 such that the city's actions could have been tortious against it. Okay, I understand. Thank you. Thank you, your honor. Thank you, counsel. We're going You're muted. You're muted, counsel. Thank you for that. I would like to just point out that we did allege independent wrongful acts, for example, the state coding of Synergy, paragraph 76 of the complaint, paragraph 78 that the city used false and contextual grounds to debar Synergy from participating in any project. And I would like to add that where they said the amendment do not, here's my problem. If they debarred you, that wasn't in response to, I guess my question is, is debarment part of this case? It's your damages. But are you really alleging that you were wrongfully debarred? Yes, to the degree that the actions of the city have prevented Synergy from being able to bid on future city contracts. No, but there's no, there's no, the actions that you claim are that you got the money too late. That's the only action that prevents you from bidding on future contracts, right? You've never been turned down for a contract by the city since any of these events occurred, have you? Well, we were kicked off A&S. And then subsequent to A&S, we've been unable to because of the loss of bonding related to the failure to pay. You can't bid on the contracts because you don't have enough money. Correct. But you're not contending that it was wrongful interference with contracts for the city not to pay you promptly after you settled these cases for less than you were seeking. Are you saying, is this in relation to debarment? Yeah, that's what I'm saying. Debarment is part of this case. Right. Yes. Because your claim is that well, I settled a bunch of cases, and I settled them for less than I was seeking, which has always happened when you settle a case. And the city didn't pay me very quickly. And therefore I'm debarred, effectively debarred because I can't get a bond. But I'm not sure how that relates to any of your claims. Well, I think it's a direct result of the claims. Well, with a slow payment and intentional interference with contracts. And if so, with what contract? Okay. You know, I can see your point, Your Honor. I do think that the practical effect of what they did resulted in debarment. And that's why we raised the claim. But, you know, I'd leave it up to your interpretation. In closing moment, I would like to say that, you know, we, an amendment would cure some of these defects because our alleged wrongful acts that have come to light subsequent to this, including the indictment of Nehru and Harlan Kelly, that have a direct impact on these cases, particularly Van Ness. Thank you, counsel. I thank both counsel in this case for your briefing and arguments. In this case, unless my colleagues have any more questions, we'll be submitting. Thank you, Your Honor. Thank you, Your Honor. This court for this session stands adjourned.
judges: Hurwitz, Bress, Corker